IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                                  Cause No. 1:14-cr-02354-JB

KEVIN FOLSE,

Defendant.

**<u>DEFENDANT'S PROPOSED VOIR DIRE QUESTIONS</u>**

Defendant, Kevin Folse, by his attorney, The Law Office of Ryan J. Villa, by Ryan J. Villa proposes to address the following issues during voir dire, and offers the following sample questions to be asked of the members of the venire panel.

Defendant proposes to engage in voir dire on the following topics:

1. Introduction;

2. Views on the use of confidential informants and drug laws;

3. Law enforcement – feelings about the FBI, police and interactions with police.

4. Credibility of witnesses in general and law enforcement witnesses;

5. Defendant's status as a prisoner;

6. The presumption of innocence and proof beyond a reasonable doubt;

7. Fifth Amendment – Right to remain silent, Right not to testify;

8. Conclusion.

Defendant's voir dire will be designed to discover the bias or prejudice of potential jurors with regard to these various issues, and will be directed toward determining whether potential jurors will be able to receive evidence and follow the Court's instructions without undue bias.

1.  During the <u>Introduction</u>, Defendant will include statements related to the purpose of voir dire and the suitability to serve on the jury such as:

    a.  Counsel and Mr. Folse's names.

    b.  That as humans our attitudes, impressions, and feelings are shaped by our life experiences.

    c.  That because of our experiences we tend to lean one way or another on various issues and that this natural and expected.

    d.  That we are not asking these questions to try to imply that any of you are unfair in any way, but rather to determine whether you might have had some experiences that might make you lean one way or another with respect to the issues in this case.

    e.  That leaning one way or another on certain issues does not make us bad people, because it is natural – it is just an indication that perhaps we would be better suited to serve on another jury.

    f.  That if there are any issues that arise during voir dire that a juror is uncomfortable about answering in front of the group they can let us know and the judge will allow them to speak in private.

2.  With regard to <u>drugs and confidential informants</u>, Defendant will ask questions such as:

    a.  How do you view drugs in society?

    b.  Do you believe our drug laws are too strict, too lenient or just right?

    c.  When you hear the term "War on Drugs" what do you think?

    d.  What role should our government play in regulating drugs in the future?

    e.  How do you view people who are involved in the drug trade?

2

    f.   How do you feel about decriminalization or legalization of drugs?

    g.   How do you feel about the use of confidential informants by law enforcement?

    h.   What type of person can be a confidential informant?

    i.   What do they think of a person who does that?

3.   With regard to <u>law enforcement</u>, Defendant will ask questions such as:

    a.   What are your feelings about the FBI?

    b.   Have any of you ever worked for law enforcement in any position?  How long? Did you get to know any of the officers there?

    c.   Do you have friends or relatives who are law enforcement officers?  What kind of relationship do you have with them?  Do they ever talk about their job as a law enforcement officer with you?  Do you know any of the people that they work with?  Are the generally of the same character, or do you think there are some who tend to be more honest than others?

    d.   Have you had any positive/negative experiences with law enforcement officers? What made the experience positive or negative?

    e.   Is it ever appropriate to question an officer's credibility and thoroughness of his investigation?  Why or why not? When?

    f.   Do any of you feel that if a person is arrested by law enforcement, it means that the person definitely did something wrong?  How many of you think an FBI agent could never make a mistake in deciding whether or not someone is doing something wrong?  How should an officer act once they realize they made a mistake?  Do you think officers always do what they should?  Why or why not?

    g.   How many of you feel that a law enforcement officer is more likely to tell the

truth than a non-law enforcement officer?  What is it about the fact that a person is a law enforcement officer that makes them more or less likely to be telling the truth?

h.  What are some reasons that an officer might not tell the truth?

i.  How many of you think that an officer would never tell an altered version of what actually happened in order to try to help the prosecution prove its case?

j.  What kind of information would be important for you to know in order to determine whether or not an officer conducted a thorough investigation?

k.  How many of you would feel uncomfortable with passing judgment on an officer's credibility?

l.  Do any of you have experience with law enforcement investigation—either personally or through friends and family?

m.  How do you feel about law enforcement looking for things they think are suspicious?  How do you think someone doing the same job day in day out in which their focus is to look for suspicious things impacts their view of situations?

4.  With regard to the credibility of witnesses, Defendant will ask questions such as:

a.  How many of you have ever heard people tell you two different stories about the same incident and had to try to determine which one was telling the truth?  How did you go about that?  What did you look for to help you decide?

b.  Is there a difference between a biased witness and a mistaken witness?

c.  What are some of the reasons someone might lie about what happened in a particular incident?

d.  Do you think these reasons apply to law enforcement officers?  Other people who

4

have been accused of a crime?

    e.  What are some of the reasons someone might misperceive what happened in a particular incident?

    f.  How would you consider evidence of someone's act of untruthfulness in a different situation, in determining that person's credibility today?  What if they were a law enforcement officer?

5.  With regard to <u>Mr. Folse's status as a prisoner</u>, Defendant will ask questions such as:

    a.  How do you feel judging someone who was in prison at the time of their alleged offense?

    b.  Can you do so without knowing why the person was in prison, meaning what crime they committed?

    c.  Has anyone known someone who went to prison?

    d.  Has anyone been employed at a prison or had a family member of friend employed in prison?

6.  With regard to <u>the presumption of innocence and proof beyond a reasonable doubt</u>, Defendant will ask questions such as:

    a.  Does everyone understand that as Kevin Folse sits here today he is presumed innocent unless and until the Government proves her guilt beyond a reasonable doubt?

    b.  Does everyone understand that as he sits here right now, he is as innocent as anyone we could pull off the street right now?

    c.  Does anyone think we should not have a presumption of innocence?  In other countries, a person accused of a crime is presumed guilty and must prove his

innocence.  Do any of you think our law should be this way?

d.  Can each of you follow Judge Browning's instruction to presume that Mr. Folse is innocent?  Can you find him not guilty if the government does not prove that he is guilty beyond a reasonable doubt even if you think he might have done something?

e.  Do you think that by the fact that he is sitting here, he must have done something wrong?  What about something illegal?

f.  Does everyone understand that a trial is the only avenue an innocent person accused of crime can use to establish that they are innocent?

g.  Judge Browning will instruct you that the Government has the burden to prove beyond a reasonable doubt that Kelvin Folse is guilty of the crimes with which he is charged—do any of you have a problem holding the Government to this standard?

h.  Do you think that this standard is too heavy a burden for the Government to have to prove?  Do you think that the Government should just have to prove that it is more likely than not that someone committed a crime?  Why?

i.  Do each of you understand that you each have your own vote on the jury?

j.  What if you were the only person on the jury who was convinced that Mr. Folse was innocent, or the only person on the jury who was convinced that he was guilty—would you change your vote?  What would make you change your vote?

k.  If after listening to your fellow jurors, you were still convinced that Mr. Folse was not guilty, could you maintain that belief even if pressured by other jurors?

l.  If you thought that there was some chance Mr. Folse committed the crime alleged,

but were not quite sure and had reasonable doubt, could you vote not guilty? What if there was pressure from other jury members to vote guilty?

7.  With regard to <u>the Fifth Amendment right to remain silent</u>, Defendant will ask questions such as:

    a.  Do you all know that a person accused of a crime has the right under the 5th Amendment to the constitution to remain silent? Why do you think we have this right in America?

    b.  How does that right relate to the Government's job of proving guilt beyond a reasonable doubt?

    c.  As part of the right to remain silent, Mr. Folse has the right not to testify in his trial, and to hold the Government to its burden of proof beyond a reasonable doubt. Does anyone think that someone accused of a crime should be *required* to testify? Does anyone think that someone accused of a crime *should* testify? Why or why not?

    d.  If I instruct Mr. Folse not to testify, will it make you think that he is guilty?

    e.  If I instruct Mr. Folse not to testify, will you hold it against him in deciding whether the Government has met its burden of proof?

    f.  If Judge Browning instructs you not to let the fact that Mr. Folse did not testify to influence your verdict in any way, can you follow that instruction?

8.  During the <u>Conclusion</u>, Defendant will ask questions such as:

    a.  As we have discussed these various issues, is there anything that has come up that any of you would like to add or to bring to our attention?

    b.  Based on our discussion, are there any of you who feel that this might not be the

best jury for you to sit on?

c.  If you were a person presumed innocent, but accused of a crime, like Mr. Folse, would you be comfortable with someone just like you—with the same life experiences, same attitudes, and same feelings—deciding whether you are innocent or guilty?

d.  Are there any of you who feel that you could not make this decision without knowing the consequences of voting guilty?

These questions are only samples and anticipate the general framework of Defendant's voir dire.  Defendant's topic areas may shift as the venire panel's responses are heard and conversation ensues.  Defendant's counsel may use concrete examples of personal experience which relate to these various issues in order to facilitate the discussion with potential jurors.

Respectfully submitted,
The Law Office of Ryan J. Villa

*Ryan J. Villa*
RYAN J. VILLA
Counsel for Kevin Folse
2501 Rio Grande Blvd NW Suite A
Albuquerque, New Mexico  87104
(505) 639-5709
ryan@rjvlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

SAMUEL HURTADO
Assistant United States Attorney
US Attorney's Office
samuel.a.hurtado@usdoj.gov

_____/s/_____
RYAN J. VILLA

8